1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  JOHNNY L. FRANKLIN,                     CASE NO. 1:04-CV-5350-OWW-SMS-P

10              Plaintiff,                  FINDINGS AND RECOMMENDATIONS
                                           RECOMMENDING DEFENDANTS' MOTION
11      v.                                 FOR SUMMARY JUDGMENT BE GRANTED

12  DR. NEUBARTH, et al.,                  (Doc. 22)

13              Defendants.
                                    /
14

15  I.      Findings and Recommendations

16          A.      Procedural History

17          Plaintiff Johnny L. Franklin ("plaintiff") is a state prisoner proceeding pro se and in forma

18  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on

19  plaintiff's complaint, filed February 20, 2004, against defendants Neubarth and Ortiz ("defendants")

20  for acting with deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth

21  Amendment.  (Docs. 1, 8.)  On September 12, 2005, defendants filed a motion for summary

22  judgment. (Doc. 22.)  Plaintiff filed an opposition on October 12, 2005, and defendants filed a reply

23  on November 10, 2005.[1]  (Docs. 25-29, 33-35.)

24          B.      Legal Standard

25          Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

26  as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

27  _____

28          [1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
    court in an order filed on August 25, 2004.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 11.)

Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

2

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

C.      Undisputed Facts[2]

1.      Plaintiff Franklin is a prisoner at Pleasant Valley State Prison ("PVSP") in Coalinga, California.

2.      Defendant Dr. Neubarth is a United States citizen over the age of 18, and has been licensed as a medical doctor by the Medical Board of California since July 18, 1983.  Defendant Neubarth was employed by the California Department of Corrections ("CDC") at PVSP as a physician/surgeon from May 19, 1997 to October 3, 2004.  Defendant Neubarth started

---

[2] Complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge.  See Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

employment with CDC at California State Prison-Corcoran in October, 2004, and is presently employed there as an anesthesiologist.  While employed at PVSP, defendant Neubarth's duties as a physician/surgeon involved performing medical evaluations of inmates; examining and diagnosing illnesses; prescribing and administering medical treatment; performing minor surgeries; supervising pre and post-operative care; and performing emergency medical treatment for staff.  Other duties involve instructing nurses, technician and other staff; attending staff meetings as required; and maintaining records and case histories of inmate examinations.

3.   Defendant Dr. Ortiz is a United States citizen over the age of 18, and has been licensed as a medical doctor by the Medical Board of California since October 2, 1975.  Defendant Ortiz has been employed by CDC at PVSP as a physician/surgeon since December 12, 1994.  Defendant Ortiz's duties involve performing medical evaluations of inmates; examining and diagnosing illnesses; prescribing and administering medical treatment; performing minor surgeries; supervising pre and post-operative care; and performing emergency medical treatment for staff.  Other duties involve instructing nurses, technician and other staff; attending staff meetings as required; and maintaining records and case histories of inmate examinations.

4.   On April 27, 2003, plaintiff was taken to Central Health at PVSP, where he was examined in the emergency room by defendant Neubarth for a complaint of a chicken bone stuck in his throat.  Plaintiff stated that another inmate rapped on his back and he coughed up some of the chicken bone before coming to be examined.  Plaintiff stated he felt as if there was still bone stuck in his upper throat.

5.   Defendant Neubarth diagnosed plaintiff with probable mucosal injury near the epiglottis (small flap of muscle tissue which closes when you swallow), ordered an x-ray exam of plaintiff's lateral neck, and noted that plaintiff was to be treated accordingly.

6.   Plaintiff's x-ray was taken on April 28, 2003, but the radiological report was not available for defendant Neubarth's review until May 1, 2003.  The report noted an area of calcification at the origin of the esophagus which might represent thyroid cartilage calcification but that

1  the existence of a foreign object could not be excluded.  The radiologist suggested the area
2  should be evaluated by an AP (anterior posterior) projection which would exclude a possible
3  foreign object. In addition, the report noted no air trapping within the hypopharyngeal (lower
4  throat), and that the epiglottis was normal.

5  7.  On April 28, 2003, defendant Ortiz examined plaintiff regarding his complaint of a chicken
6  bone stuck in his throat.  Defendant Ortiz also reviewed plaintiff's soft tissue of lateral neck
7  x-ray taken that same day.  The x-ray showed a dot-like increase in the radio-luceny over the
8  epiglottis or laryngeal area of plaintiff's throat.  Defendant Ortiz did not have the
9  radiologist's report of the x-ray, and in his opinion, the x-ray was ambiguous.

10  8.  Defendant Ortiz then proceeded to do a full examination on plaintiff, and looked down his
11  throat.  Plaintiff complained of a sore throat, which appeared a little red.  Defendant Ortiz
12  then prescribed throat lozenges and an antibiotic in hopes of relieving his discomfort.

13  9.  The only time defendant Ortiz examined or treated plaintiff regarding a chicken bone in his
14  throat was April 28, 2003.  It was defendant Ortiz's medical opinion that observation of
15  plaintiff's condition was the best treatment and defendant Ortiz asked plaintiff to follow-up
16  with a doctor the next day if he still had complaints.  Defendant Ortiz was confident
17  plaintiff's body would expel any foreign object, if one was there, and that plaintiff did not
18  face a significant risk of harm if this happened.  Indeed, this is standard treatment for a
19  patient not in a lot of pain and who is breathing normally with no clogged airways.

20  10.  On May 1, 2003, Defendant Neubarth requested an anterior posterior x-ray of plaintiff's
21  neck.

22  11.  Plaintiff's AP projection x-ray was taken on May 5, 2003.  The radiologist's report noted the
23  presence of calcified thyroid cartilage in the lower throat airway mimicking a foreign body,
24  but that there also was no obvious foreign body present within the neck.

25  12.  On May 13, 2003, plaintiff arrived to the clinic with a thin bone-like object which he claimed
26  was a chicken bone he coughed up on May 5, 2003.  Defendant Neubarth reviewed plaintiff's
27  prior radiological x-ray reports and noted the results in his progress notes.  Defendant

28  ///

1   Neubarth then requested a follow up x-ray exam for plaintiff and an Ear, Nose and Throat

2   ("ENT") consult with a specialist.

3   13.   Plaintiff had another lateral soft tissue x-ray exam of his neck on May 15, 2003.  The

4         radiologist did a comparison of the April 28, 2003, x-ray examination to this examination.

5         The results were that the faint area of linear density in the region of the epiglottic folds on

6         the thyroid cartilage from the April 28, 2003, x-ray was no longer present, but represented

7         the prior ingested foreign object.

8   14.   Defendant Neubarth examined plaintiff again on June 5, 2003, prior to his ENT consult.

9         Defendant Neubarth noted the results of plaintiff's May 15, 2003, x-ray report and examined

10        plaintiff for complaints of mild throat pain, and left shoulder pain.  Defendant Neubarth also

11        prescribed Naproxen for plaintiff's pain.

12  15.   On June 25, 2003, plaintiff was examined by Dr. Wilbur Suesberry, an ENT specialist.  At

13        the time of this exam plaintiff complained of drooling, and mild pain with swallowing.  Dr.

14        Suesberry's diagnosis of plaintiff's condition stated that plaintiff possibly had a foreign body

15        of the pharynxesophagus (throat) by history, and that there was no longer a foreign body in

16        the area.  His report also stated the drooling was not related to the chicken bone incident.

17        D.   Eighth Amendment Medical Care Claim

18              In his complaint, plaintiff alleges that on April 27, 2003, he was seen by defendant Neubarth

19  for his complaint of a chicken bone lodged in his throat, which was causing him breathing and

20  swallowing problems. (Doc. 1, Comp., § IV.) Plaintiff alleges that defendant Neubarth looked down

21  his throat and told him a bone was there but did nothing to remove it. (Id.) Plaintiff alleges he was

22  seen two times that night and was seen the next day by defendant Ortiz. (Id.) Plaintiff alleges three

23  x-rays were taken, two of which showed the bone. (Id.) The third x-ray was taken after the bone

24  came up. (Id.) Plaintiff alleges that the bone was in his throat from April 27, 2003, to May 4, 2003,

25  and caused him pain. (Id.)

26              To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

27  conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452

28  U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an

Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff was seen by defendant Neubarth on April 27, 2003, for a complaint of a chicken bone stuck in his throat. (Undisputed Fact 4.) Plaintiff stated that another inmate rapped on his back and he coughed up some of the chicken bone before coming to be examined, but he felt as if there was still bone stuck in his upper throat. (Id.)  Defendants contend that plaintiff was alert; had no shortness of breath, wheezing, or trouble swallowing; did not show any signs of distress; and had no complaints of pain. (Neubarth Dec., ¶6.)  Defendants contend that upon visual examination, plaintiff's pharynx (throat) appeared normal and defendant Neubarth did not see a foreign body in his throat. (Id.)  Defendant Neubarth diagnosed plaintiff with probable mucosal injury near the epiglottis (small flap of muscle tissue which closes when you swallow), ordered an x-ray exam of plaintiff's lateral neck, and noted that plaintiff was to be treated accordingly. (U.F. 5.)  The x-ray ordered by defendant Neubarth was taken the next day, April 28, 2003. (U.F. 6.)

On April 28, 2003, defendant Ortiz examined plaintiff regarding his complaint of a chicken bone stuck in his throat. (U.F. 7.)  Defendant Ortiz also reviewed plaintiff's soft tissue of lateral neck x-ray, which had been taken that day. (Id.)  The x-ray showed a dot-like increase in the radio-luceny over the epiglottis or laryngeal area of plaintiff's throat. (Id.)  Defendant Ortiz did not have

the radiologist's report of the x-ray, and was of the opinion that the x-ray was ambiguous,  U.F. 7, contending that it may or may not have been showing a foreign body in plaintiff's throat. (Ortiz Dec., ¶4.) Defendant Ortiz then proceeded to do a full examination on plaintiff, and looked down his throat, U.F. 8, but contends he did not observe a foreign body. (Ortiz Dec., ¶5.) Defendant contends that plaintiff was not in any distress; was breathing and swallowing normally; was not wheezing; and was not in severe pain. (Id., ¶5.) Defendant contends that plaintiff did not have any objective symptoms of a foreign body in his throat blocking his airwaves. (Id.) Plaintiff complained of a sore throat, which appeared a little red, and for which defendant Ortiz prescribed throat lozenges and an antibiotic in hopes of relieving plaintiff's discomfort, U.F. 8, which defendant contends was minor.  (Ortiz Dec., ¶5.)

Defendant Ortiz examined or treated plaintiff regarding a chicken bone in his throat only once, on April 28, 2003. (U.F. 9.)  In defendant Ortiz's medical opinion, observation of plaintiff's condition was the best treatment and defendant Ortiz asked plaintiff to follow-up with a doctor the next day if he still had complaints. (Id.) Defendant Ortiz was confident plaintiff's body would expel any foreign object, if one was there, and that plaintiff did not face a significant risk of harm if this happened. (Id.)  Such a course is standard treatment for a patient not in a lot of pain and who is breathing normally with no clogged airways.  (Id.)

The radiological report from plaintiff's April 28 x-ray became available for defendant Neubarth's review on May 1, 2003. (U.F. 6.)  The report noted an area of calcification at the origin of the esophagus which might represent thyroid cartilage calcification but that the existence of a foreign object could not be excluded.  (Id.)  The report also noted no air trapping within the hypopharyngeal (lower throat), and that the epiglottis was normal.  (Id.)  The radiologist suggested the area should be evaluated by an AP (anterior posterior) projection which would exclude a possible foreign object, and defendant Neubarth requested one on May 1, 2003. (Id.; U.F. 10.) Plaintiff's AP projection x-ray was taken on May 5, 2003. (U.F. 11.)  The radiologist's report noted the presence of calcified thyroid cartilage in the lower throat airway mimicking a foreign body, but that there also was no obvious foreign body present within the neck.  (Id.)

///

On May 13, 2003, plaintiff arrived to the clinic with a thin bone-like object which he claimed was a chicken bone he coughed up on May 5, 2003. (U.F. 12.)  Defendant Neubarth reviewed plaintiff's prior radiological x-ray reports and noted the results in his progress notes.  (Id.) Defendant Neubarth then requested a follow up x-ray exam for plaintiff and an Ear, Nose and Throat ("ENT") consult with a specialist. (Id.)  Plaintiff had another lateral soft tissue x-ray exam of his neck on May 15, 2003. (U.F. 13.)  The radiologist did a comparison of the April 28, 2003, x-ray examination to this examination. (Id.)  The results were that the faint area of linear density in the region of the epiglottic folds on the thyroid cartilage from the April 28, 2003, x-ray was no longer present, but represented the prior ingested foreign object. (Id.)  Defendant Neubarth examined plaintiff again on June 5, 2003, prior to his ENT consult. (U.F. 14.)  Defendant Neubarth noted the results of plaintiff's May 15, 2003, x-ray report and examined plaintiff for complaints of mild throat pain, and left shoulder pain. (Id.)  Defendant Neubarth also prescribed Naproxen for plaintiff's pain. (Id.)

On June 25, 2003, plaintiff was examined by Dr. Wilbur Suesberry, an ENT specialist.  At the time of this exam plaintiff complained of drooling, and mild pain with swallowing.  Dr. Suesberry's diagnosis of plaintiff's condition stated that plaintiff possibly had a foreign body of the pharynxesophagus (throat) by history, and that there was no longer a foreign body in the area.  His report also stated the drooling was not related to the chicken bone incident.

Defendants argue that they are entitled to judgment as a matter of law on plaintiff's claim against them because they did not act with deliberate indifference and the treatment they provided plaintiff was proper and fully within the community standard of care for physicians. (Neubarth Dec., ¶14; Ortiz Dec., ¶7.)

Plaintiff's version of the events differs from defendants' in that plaintiff contends that he was seen by defendant Neubarth twice on April 27, 2003, and that both defendant Neubarth and defendant Ortiz saw the bone in his throat but did nothing to remove it. (Franklin Dec., ¶¶5, 6.) Plaintiff also contends that he was having problems breathing and swallowing, and was in pain. (Id., ¶6.)  Plaintiff argues that the presence of a chicken bone in his throat was a serious medical condition

///

1   and that defendants acted below the community standard of care and with deliberate indifference

2   when they failed to take steps to remove the bone.

3          "Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. "Under this

4   standard, the prison official must not only 'be aware of the facts from which the inference could be

5   drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"

6   Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the

7   risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the

8   risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

9   "A difference of opinion between a prisoner-patient and prison medical authorities regarding

10  treatment does not give rise to a s 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

11  1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the

12  doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this

13  course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90

14  F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

15         Plaintiff was seen by defendants for a complaint of a chicken bone lodged in his throat, and

16  plaintiff contends that they violated his rights under the Eighth Amendment by doing nothing to

17  remove the bone.  Although there is a dispute between the parties over whether defendants saw a

18  foreign object in plaintiff's throat at the time they examined him and over what symptoms plaintiff

19  was experiencing, the dispute does not raise a triable issue of fact because plaintiff has not submitted

20  any admissible evidence that the medical treatment provided by defendants was so deficient that it

21  rose to the level of an Eighth Amendment violation or that defendants knowingly disregarded an

22  excessive risk to plaintiff's health and safety.

23         As a lay person, plaintiff is not qualified to render an opinion regarding the adequacy of the

24  medical care he was provided or regarding what additional and/or alternate treatment defendants

25  should have provided him.  Plaintiff was examined for his complaint and provided with x-rays.  The

26  first x-ray revealed a calcification that might merely be thyroid cartilage calcification, although

27  presence of a foreign object could not be excluded.  (Doc. 27, P's Ex. 4.)  Further evaluation was

28  recommended and this recommendation was followed through with when defendant Neubarth

10

ordered a second x-ray. (Id.) The second x-ray revealed calcified thyroid cartilage, but no obvious foreign body in the neck. (P's Ex. 5.) When compared with the second x-ray, the third x-ray taken after the bone came up revealed a faint area of linear density that was no longer present and was compatible with the foreign object. (P's Ex. 6.) Nothing in the x-ray reports, which were submitted by plaintiff in support of his opposition, support plaintiff's position that defendants acted with deliberate indifference in choosing the course of treatment they did.

Other than his opinion, which is not sufficient, plaintiff has not submitted any evidence "that the course of treatment defendants chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson, 90 F.3d at 332 (internal citations omitted). Plaintiff's disagreement with the course of treatment chosen is insufficient and plaintiff simply cannot raise a triable issue of fact concerning the course of treatment rendered by opining that the care provided by defendants was deficient. Further, although plaintiff contends that he was experiencing trouble breathing and swallowing, and was in pain, plaintiff has not submitted any evidence that defendants were aware that a substantial risk of serious harm to plaintiff existed but chose to disregard that risk. Defendants are therefore entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim against them.

E.   Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed September 12, 2005, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

///

///

///

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    April 28, 2006**                   _____/s/ Sandra M. Snyder_____
icido3                                          UNITED STATES MAGISTRATE JUDGE